UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:10CR594HEA(MLM) |
| ) | |
| DONALD JOHNSON, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on defendant's Motion to Suppress Identification. [Doc. 28] The government responded. [Doc. 34] At the time of the Evidentiary Hearing on April 15, 2011 the parties agreed that the Motion could be submitted on the transcript of a hearing held on March 24, 2011 before the Honorable E. Richard Webber in Case No. 4:06CR758ERW. The events comprising the instant offense were the primary basis for a Petition to revoke defendant's supervised release in the '06 case. Defendant appeared before Judge Webber and evidence was adduced. Judge Webber found that defendant had violated conditions of his supervised release and continued sentencing until April 26, 2011.[1] Following the hearing the government filed a Motion to Consolidate the '06 case with the instant case. Judge Webber granted the Motion that final revocation proceedings

---

[1] Judge Webber held as follows: "The court makes the following findings: that on October 29, 2010, at approximately 4:25 P.M. Mr. Donald Johnson did commit another federal, state or local crime, specifically that he was in possession of a weapon described by the witness today. That he - - the court takes judicial notice that he is a previously convicted felon. Transcript at p.48, l.14-20.

would be addressed by Judge Autrey in conjunction with the instant case. The '06 case was transferred to Judge Autrey and the final supervised release revocation hearing was set for May 4, 2011.

An expedited transcript was ordered and received by this court on April 25, 2011. Based thereon the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

On October 29, 2010 Officer Blake Witzman of the St. Louis Metropolitan Police Department was on duty at approximately 4:25 P.M. He was assigned to the Sixth District Street Team. His partners were Officers Orie Figgs and Adam Duke. They were in uniform and in a marked police vehicle. In the 5800 block of Theodore they observed a black male subject talking to the driver of a dark colored Impala. At that time they were about a block away. As the officers approached, the person standing outside the car, who was later identified as defendant, walked quickly away from the car. The officers continued to approach and defendant began running. The officers followed him in their vehicle. When defendant entered the back yard of 5209 Plover, PO's Witzman and Duke began a foot chase. They saw defendant retrieve a firearm from his waistband and discard it into the rear yard of 5209 Plover. The officers continued the chase and gave defendant verbal commands to stop and told him he was under arrest. PO Witzman yelled that defendant had a gun and PO Figgs retrieved the discarded firearm. Later, PO Witzman identified the gun as the one he saw defendant discard.

At certain points during the chase the officers lost sight of defendant. A female citizen approached the officers and told them that the person who ran from them and tossed the pistol was named Don-Don and she pointed to 5052 Plover.[2] All three officers responded to that address, knocked on the door and spoke with a female resident. They asked her if someone named Don-Don lived there. She responded in the affirmative and gave them pedigree information including defendant's full name, Donald Johnson. She said he was not present in the home at that time.

Later the officers ran the name and pedigree in a law enforcement computer system such as Rejis or Crime Matrix. They were able to pull up a Department of Revenue photo and arrest photos of defendant. PO Witzman recognized and identified the person in the photos as the person who ran from the officers and discarded the firearm.[3] After identifying the photograph the officers put out a wanted for defendant. Defendant was arrested on November 3, 2010. PO Witzman identified defendant sitting in the courtroom as the person he saw run from him and discard the firearm.

PO Witzman testified that prior to this incident he had never seen defendant before. He said he had on a navy blue jacket with a stripe on it that looked almost like a postal worker's jacket. He said defendant had a goatee similar to defense

---

[2] Later in his testimony PO Witzman said he could not recall if she said she saw him discard the gun but she did say that "The guy that ran from you, his name is - - they call him Don-Don." Transcript at p.32, l.21-22.

[3] It was a .32 semi-automatic pistol which functioned fully when examined in the Police Department laboratory.

counsel's goatee. When defendant was in the back yard of 5209 Plover, PO Witzman was about 15-20 feet away from him and was observing his back. PO Witzman had not seen defendant between the time of the incident and his in-court identification.

## CONCLUSIONS OF LAW

Defendant asks that PO Witzman's identification of defendant be suppressed because defendant's out-of-court identification was the product of an unlawful arrest; because the circumstances surrounding the out-of-court identification were so inherently suggestive as to violate due process; and because any in-court identification would be impermissibly tainted by the suggestive out-of-court procedures and would give rise to a substantial likelihood of irreparable misidentification. The government's Response briefly sets out the facts and then recites a small paragraph of the law concerning identifications. There is no attempt to apply the law to the facts of this case.

The Supreme Court has established a two-step process for evaluating the constitutional permissibility of in-court identification testimony based on out-of-court identification procedures. It requires a determination of whether the identification process was impermissibly suggestive and, if so, whether it was so suggestive "as to give rise to a very substantial likelihood of irreparable misidentification." United States v. Davis , 103 F.3d 660, 670 (8th Cir. 1996) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968); accord Manson v. Brathwaite, 432 U.S. 98, 116 (1977)), cert. denied, 520 U.S. 1258, (1997).

Even if out-of-court procedures have been suggestive, a court may nevertheless admit in-court identification testimony if the court determines it to be independently reliable. See Manson, 432 U.S. at 98. The court should consider the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated at the confrontation and the time between the crime and the confrontation; against these factors is to be balanced the corrupting effect of the suggestive identification itself. Manson, 432 U.S. at 114; Neil v. Biggers, 409 U.S. 188, 199 (1972); Davis, 103 F.3d at 670. Reliability is the key to admissibility for both pretrial and in-court identifications. However, if impermissibly suggestive procedures are not employed, "independent reliability is not a constitutionally required condition of admissibility, and the reliability of the identification is simply a question for the jury. United States v. Wong, 40 F.3d 1347, 1359 (2nd Cir. 1994) (quoting Jarrett v. Headley, 802 F.2d 34, 42 (2nd Cir. 1986)), cert. denied, 516 U.S. 870, (1995).

The Eighth Circuit has held that a two-step inquiry is required in reviewing a photographic display. The first step is to determine whether the photographic display was impermissibly suggestive and, if it was, the second inquiry is whether, under the totality of the circumstances, the display created a substantial risk of misidentification at trial. See United States v. Briley, 726 F.2d 1301, 1306 (8th Cir. 1984). Here there was no photo "spread" in the traditional sense. When PO Witzman got the pedigree of Don-Don, he ran it in the computer and viewed the

Department of Revenue and arrest photos which were produced.  The running of a name and pedigree is such a standard procedure that suggestibility is not even an issue.  PO Witzman testified he was able immediately to identify defendant.  <u>See</u> photograph attached to Government's Response.  Although there is nothing suggestive about running the name and pedigree in the computer and viewing the photos produced, there is a strong possibility that upon learning the name Don-Don from the female witness and the pedigree information from the woman at 5209 Plover, PO Witzman automatically assumed and simply concluded that the photos produced by the computer were the photos of the man he saw running.

For example, his opportunity to view the defendant at the time of the incident is sketchy at best.  PO Witzman said when he first saw defendant he was a block away.  When he chased him, defendant had his back to him the entire time and never got closer than 15-20 feet to him.  He had never had any contact with defendant before.  There was no evidence presented to the court about his opportunity to see defendant's face and his only description was in response to counsel's question that he had a goatee.  The only other description was of defendant's jacket but no evidence was produced of whether he was wearing that jacket in any of the photos or at the time of his arrest.  However, these facts do not mean that the procedure itself was inherently suggestive.  The burden is on defendant to show that the identification procedure used was impermissibly suggestive.  Where, as here, there has been no showing of impermissible suggestiveness, it is not necessary to move on to the second inquiry.  <u>See</u>, <u>e.g.</u>, <u>United States v. Mays</u>, 822 F.2d 793, 798 (8th Cir.

1987). The reliability of identification testimony is a question which may be presented to the jury at trial. See United States v. Schultz, 698 F.2d 365, 368 (8th Cir. 1983).

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Identification be **DENIED**. [Doc. 28]

The parties are advised that they have fourteen (14) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

Trial in this case has been set on **Tuesday**, **June 28, 2011** at **9:30 A.M.** before the Honorable Henry E. Autrey.

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this  9th  day of May, 2011.